**FIRST NAT. BANK v. UNITED STATES.**

No. 44927.

Court of Claims.

Jan. 6, 1941.

230

Wilton H. Wallace, of Washington, D.C. (E. F. Colladay and Colladay, McGarraghy, Colladay & Wallace, all of Washington, D. C., on the brief), for plaintiff.

S. E. Blackham, of Washington, D.C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D.C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, GREEN, and WHITAKER, Judges.

WHALEY, Chief Justice.

The question presented in this case is whether plaintiff is entitled to a deduction from gross income in 1934 for certain bad debts under the provisions of section 23(k) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 673, which provides for the allowance of a deduction for "Debts ascertained to be worthless and charged off within the taxable year * * *."

The statute provides two conditions precedent for the allowance of a bad-debt deduction, the determination of worthlessness and a charge-off within the taxable year.

This plaintiff is a national bank subject to supervision by Federal authorities and therefore comes within the Commissioner's regulations which were first promulgated as Treasury Decision 4633 and incorporated in his subsequent regulations to the effect that where debts are charged off pursuant to the specific orders of the Federal banking authorities, "such debts shall

be conclusively presumed, for income-tax purposes, to be worthless." In this case the facts show that the debts in question were charged off pursuant to specific orders of a national bank examiner and therefore, under the conclusive presumption of the Commissioner's regulations, the first condition of the statute for allowance of the deduction has been satisfied.

The Commissioner's regulations, however, further provide, consistent with the statute, that "in order that any amount of the charge-off may be allowed as a deduction for any taxable year it must be shown that the charge-off took place within such taxable year." Regulations 94, Article 23 (k–1). Whether what occurred in this case brings plaintiff within that regulation and the statute is the real issue in the case. Did plaintiff charge off the debts within the taxable year 1934?

In 1934 plaintiff was apparently in bad financial condition and, as a result of an examination, a national bank examiner determined that additional capital should be added and that certain assets (loans) which were being carried at face value should be eliminated either in whole or in part from the assets of the bank. Pursuant to that determination, it was decided that the bank should take steps to secure a loan from the Reconstruction Finance Corporation to provide the additional capital and that when that was done certain debts designated by the examiner should be charged off plaintiff's books. Pursuant to that direction of the examiner, plaintiff took action to carry out his instructions. The examiner further directed that until the new capital was obtained the charge-offs should not be effected and those instructions were followed by plaintiff. The resolution of the bank to carry out the examiner's direction was adopted June 27, 1934, but it was not until about March 11, 1935, that the steps incident to the procurement of the additional capital were completed. When that was done, the Comptroller of the Currency instructed plaintiff to make an immediate charge-off of the debts which were designated by the bank examiner at the meeting of plaintiff's Board of Directors on June 27, 1934. On the following day, March 12, 1935, plaintiff began to charge off the debts and the action was completed on March 18, 1935.

Our question is whether these actions by the plaintiff constituted a charge-off within the taxable year 1934. The facts are convincing that it did not. Plaintiff's position is that the resolution of June 27, 1934, constituted a charge-off in 1934, whereas the resolution merely provided that the debts be charged off as an incident to the refinancing arrangements which were then being undertaken, and the examiner specifically instructed plaintiff's officers not to charge off these items until the financial arrangements were completed. These financial arrangements were completed not in 1934 but in 1935 when the debts were charged off plaintiff's books. Until the latter date they were carried as assets on the books of plaintiff and reflected in its surplus. Obviously such action was a charge-off in 1935 and not in 1934.

The reason for a strict compliance with the statute with respect to the charge-off of bad debts of banks is illustrated in the instant case. It is well recognized that bank examiners often require debts to be written off which would not ordinarily be considered or allowed as worthless in the case of other business establishments and that the bank examiner must proceed with the thought in mind of the greatest precaution and safety for the solvency of the bank. However, until the decision of Citizens' Nat. Bank of Orange v. Commissioner, 4 Cir., 74 F.2d 604, 100 A.L.R. 699, decided January 8, 1935, and the acceptance of the principles therein laid down through the promulgation on April 3, 1936, of Treasury Decision 4633, the mere write-off of debts at the direction of a bank examiner was not considered a conclusive determination that the debts were worthless. By that decision and the Commissioner's subsequent regulations, it was recognized that there should be comity between two branches of the Government and that the Commissioner should not deny a deduction to a bank for a bad debt when at the same time the bank examiners were requiring that same bank to eliminate those debts from its asset accounts. Here the bank examiner was not requiring the assets to be eliminated immediately from the accounts of the plaintiff. On the contrary he was instructing the plaintiff to keep them as assets until a specific time. That the debts may not have been considered as entirely worthless is well illustrated by the descriptive term "nonbankable assets" appearing in the resolution of the Board of Directors of plaintiff of June 27, 1934,

and by the further reference in the letter of the Comptroller of the Currency of March 13, 1935, where the Comptroller, in instructing plaintiff to make the charge-off, stated that he assumed that during the period since the examination by the bank examiner and the time of his letter some cash collections had been made on some of the items. It would seem therefore that at least some of the items in question were merely of doubtful value rather than being entirely worthless and that a charge-off was not to be made until it actually took place in March 1935. In American Cigar Co. v. Commissioner, 66 F.2d 425, 427, certiorari denied 290 U.S. 699, 54 S.Ct. 209, 78 L.Ed. 601, the Circuit Court of Appeals for the Second Circuit held: "In order to secure a deduction of a debt as worthless, a taxpayer must ascertain its worthlessness, charge it off on his books, and take his deduction all during the same taxable year."

In view of the foregoing, we are of the opinion that the charge-off of the debts in question did not occur within the taxable year 1934 and that a deduction therefor cannot be allowed for that taxable year.

It follows that the petition must be dismissed. It is so ordered.

LITTLETON and GREEN, Judges, concur.

WHITAKER, Judge (dissenting).

I am unable to agree with the majority opinion in this case. What the act requires to entitle a taxpayer to a deduction for a bad debt is (1) ascertainment of worthlessness, and (2) affirmative evidence in its books or records, if it kept any, that it had ascertained in the taxable year that the debts were worthless. The act does not require that the debt be charged off on the taxpayer's books of account; it merely requires that they "be charged off".

Here we have a minute of the taxpayer's supreme governing body resolving that the debts "be charged off." This minute appears in the taxpayer's permanent records. This is the highest evidence of the fact that the taxpayer had ascertained the debts to be worthless in the taxable year. It is evidence at least equally cogent with that of an account book entry. We have previously so held. First State Bank of Stafford, Kansas, v. United States, 67 Ct. Cl. 332. Cf. Cammack v. United States, 8 Cir., 113 F.2d 547.

The fact that a charge-off was not made on the books of account is not evidence that the taxpayer had changed its mind about the worthlessness of the debts, since it failed to take this action only for the reason that the bank examiner had so directed. And he so directed not because he had changed his mind about the worthlessness of the debts but only because he thought it inadvisable for the bank's then condition to be reflected in its statement.

I think the plaintiff is entitled to recover.