**BOONE et al. v. PIERCE et ux.**

No. 2832.

Court of Civil Appeals of Texas. Waco.

Feb. 17, 1949.

Rehearing Denied March 10, 1949.

Fitzpatrick & Dunnam, of Waco, and J. D. Brown, Jr., of Gatesville, for appellants.

L. M. Stinnett, of Gatesville, for appellees.

HALE, Justice.

Appellants, as owners of the corporate stock of a bank in liquidation, sought by this suit to recover on five promissory notes in the principal aggregate sum of $1500 and to foreclose their asserted liens on certain land securing the payment thereof. Appellees denied liability on the notes and by way of cross action sought a cancellation of the notes and liens asserted upon the, ground, among others, that such instruments were void, invalid and unenforceable because the agreement evidenced thereby was in violation of the Federal Emergency Farm Mortgage Act of 1933.

The case was tried in the court below without a jury and resulted in judgment for appellees. By the two points upon which their appeal is predicated, appellants say the trial court erred (1) in refusing to render judgment for them as prayed for and (2) in rendering judgment for appellees on their cross action. Under these points they contend, among other things, that the evidence fails to show the notes and liens declared upon to be violative of any Federal Statute or that appellants are estopped from asserting the validity thereof in this suit.

■ The record before us does not contain any findings of fact and conclusions of law or any request therefor. Hence, in passing upon the contentions here presented it is the duty of this court to view the evidence as a whole in the most favorable light from the standpoint of appellees and to assume that the trial court found all issuable facts raised by the evidence in such manner as to sustain the judgment.

■■ It is a matter of common knowledge that the Emergency Farm Mortgage Act of 1933, U.S.C.A. Title 12, Chap. 7, Sec. 1016 et seq., was originally enacted at a time of national crisis resulting from an economic depression. The general purpose and intent of the Congress in the enactment thereof was to extend relief to harassed farmers struggling under debts and thereby enable such farmers to have their debts voluntarily scaled down and refinanced so as to save their farms and rehabilitate themselves financially. To that end the Act provided in part that the amount of the mortgage given by any farmer, together with all prior mortgages or other evidences of indebtedness secured by such farm property of the farmer, should not exceed seventy-five per centum of the normal value thereof, nor should a loan in excess of $7500 be made to any one farmer; that no loan should be made thereunder unless the holder of any prior mortgage or instrument of indebtedness secured by such farm property should arrange to the satisfaction of the Land Bank Commissioner to limit his right to proceed against the farmer and such farm property for default in payment of the principal; and that any person who should knowingly make any material false representation for the purpose of obtaining any loan thereunder, or in assisting in obtaining any such loan, should, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than six months, or both.

The record in this case discloses that Messrs. Boone, Foote and Humes, as the then owners of the land in controversy, placed a mortgage lien against the same during the year 1923 for the purpose of securing the payment of their note in the principal sum of $7500. In 1924 they conveyed the land to J. R. Pancake who as-

sumed the payment of the $7500 note. In 1930 Pancake conveyed the land to appellee, E. J. Pierce, who assumed the payment of the $7500 note and in addition thereto executed four promissory notes, each being in the principal sum of $750, each being payable to Boone and Foote in their representative capacity as Liquidating Agents of the First State Bank of Turnersville, Texas, the payment thereof being secured by a vendor's lien and a separate deed of trust lien on the land so conveyed.

In December of 1933 Pierce was delinquent in the payment of the foregoing obligations and at the request of Boone and Foote he applied to the Federal Land Bank of Houston and to the Land Bank Commissioner for a loan in the sum of $10,500 as a means of refinancing his indebtedness. The Land Bank and Commissioner made a tentative commitment at that time to grant loans of $4,000 on behalf of the Bank and of $3,500 on behalf of the Commissioner, respectively, provided the total outstanding indebtedness against the land was reduced to a sum not exceeding $7500, in order to allow the applicant a minimum equity in the land as required under the applicable Federal Statutes. The Kansas City Life Insurance Co., who had become the owner of the $7500 note, declined to scale down its debt and thereupon Boone and Foote as Liquidating Agents declined and refused to release their indebtedness, with the result that Pierce was unable to consummate the proposed loan and the tentative commitment from the Land Bank and Commissioner was withdrawn in May of 1934.

On July 16, 1934, the Kansas City Life Ins. Co. instituted suit against Boone, Foote, Humes, Pancake and Pierce, individually, and against Boone and Foote as Liquidating Agents, seeking a joint and several recovery against each individual defendant in the sum of $10,000 on account of principal, interest and attorneys' fees alleged to be due on its $7500 note and seeking a foreclosure as against all defendants of its mortgage lien on the land in controversy. There was competent evidence to the effect that Pierce was then insolvent but Boone and Foote were solvent; that Pierce informed Boone and Foote he did not intend

to do anything about the pending suit; that Boone and Foote then told Pierce if he would secure a dismissal of the suit and renegotiate a loan of $7500 with the Land Bank and Commissioner they would give him a full and unconditional release of the four notes held by them in the sum of $3,000 and of the liens securing the payment thereof; that in reliance upon such statements so made Pierce secured an agreement from the life insurance company to dismiss its suit upon receipt of $600 in cash and the further sum of $7500 to be refinanced through the proposed loan from the Land Bank and Commissioner; that Pierce paid $600 to the insurance company and re-negotiated a loan with the Land Bank and Commissioner on the basis of their prior commitment for $7500; and that in reliance upon the statements made to him by Boone and Foote, Pierce executed an affidavit on September 13, 1934, which was furnished to the Land Bank and Commissioner.

The affidavit of Pierce recited in substance that he had made application to the Land Bank and Commissioner for a loan under the Emergency Farm Mortgage Act of 1933; that the application had been tentatively approved subject to the condition, among others, that all of the applicant's debts, secured and unsecured, be reduced to $7500; that affiant had reduced the indebtedness, secured and unsecured, owing by him to his various creditors, to the amount required in said tentative commitment; that the reduction in said indebtedness was bona fide and the affiant had not agreed nor would he agree, directly or indirectly, to give or execute any renewal, extension or other evidence of indebtedness for that portion of his indebtedness which his creditors had scaled down and credited to his account; and that the statements therein contained were made with the expectation and intention that the Land Bank and Commissioner would rely thereon in making the proposed loan.

In the light of the foregoing affidavit and other pertinent information the Land Bank and Commissioner required as a further prerequisite to the completion of the loan that Boone and Foote execute a proper release of the four notes held by them in the sum of $3,000. Pierce testified in substance that when he requested Boone and Foote to furnish him with the required release they refused to do so; that in the early part of December the Land Bank and Commissioner again cancelled their tentative approval of his pending application; and that on December 12, 1934, at the request of Boone and Foote he executed the five notes and the deed of trust herein sued upon under protest and at the same time Boone and Foote executed a release of the four notes theretofore held by them. This release was duly signed and acknowledged by Boone and Foote as Liquidating Agents on December 12, 1934, was filed for record on the same day, and in due time was brought forward into the abstract of title submitted to the Land Bank and Commissioner. The release was in proper form and by its terms it expressly declared that the notes therein described had been "fully paid, released, satisfied, cancelled and the lien securing the same extinguished." It made no reference to any renewal or extension of any part of the indebtedness thereby released. The deed of trust securing the payment of the five notes herein sued upon was not filed for record until March 12, 1935, after the loan from the Land Bank and Commissioner had been fully consummated. Upon consummation of the loan the proceeds thereof were delivered to the Life Insurance Company, its lien was transferred to the Land Bank and Commissioner and its pending suit against Boone and others was dismissed.

In our opinion the evidence as a whole was sufficient to warrant the trial court in finding by implication that it was the purpose of Boone and Foote in requesting and accepting from Pierce the five notes and deed of trust herein sued upon to carry forward and keep alive a part of the indebtedness to them as evidenced by their four notes in the sum of $3,000; that they knowingly executed the unconditional release of their four notes for the purpose of assisting Pierce in obtaining the $7500 loan from the Land Bank and Commissioner; and that such act in so releasing said notes, under all the facts and circumstances in

evidence, constituted a material false representation on the part of Boone and Foote within the meaning of the Emergency Farm Mortgage Act of 1933, 12 U.S.C.A. § 1019.

Since the evidence was sufficient to sustain implied findings that the agreement evidenced by the notes and liens here sued upon was contrary to the purpose, spirit and policy of the Emergency Farm Mortgage Act of 1933, we cannot say the trial court erred in concluding as a matter of law that such notes and liens are void and unenforceable. McCrory et al. v. Smeltzer et al., 132 Tex. 383, 124 S.W.2d 336; Briley v. Oldham, 132 Tex. 550, 124 S.W.2d 854; Wheeler v. Willis, Tex.Civ.App., 138 S.W.2d 142; Payne v. Miller, Tex.Civ.App., 153 S.W.2d 514, er. dis.; Ellwood v. Lancaster, Tex.Civ.App., 157 S.W.2d 973.

Accordingly, both of appellants' points of error are overruled and the judgment of the court below is affirmed.